IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
BY MAIL
APR 0 6 2020
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

UNITED STATES OF AMERICA,
           Plaintiff,

v.

Case No. 18-CR-120(~~ADM~~/KMM)
(NEB/KMM)

**<u>AMENDED MOTION FOR A NEW TRIAL</u>**

DWIGHT FREDERICK BARNES,
           Defendant.

---

    Defendant, DWIGHT FREDERICK BARNES, impelled to act, in forced Pro Se, attempt in layman terms to submit this motion for a new trial pursuant to Federal Rules of Criminal Procedure Rule 33 after an unauthorized and deliberately inflammatorily worded motion for new trial was filed in perpetual **"bad blood"** by attorney Robert A. Lengeling feigning as advisory counsel, in effort of undermining any warrant of a new trial. On March 24, 2020, Mr. Barnes received an order from this Court titled "Order On Motion To Withdraw Motion For New Trial" and an Amended order titled the same followed up to correct an erroneous docket numbering. <u>Exhibit #1</u> entail the postmarked envelope dated March 19, 2020. These orders granting Mr. Barnes' request to motion for a new trial were respectively dated March 16, 2020 and March 17, 2020, yet having not been received in the US postal mail by Mr. Barnes until March 24, 2020, thus setting the 14 day filing time limit from March 17, 2020. And with the "Stay at Home" emergency order issued by Minnesota Governor Timothy Waltz due to the global corona virus (COVID-19) pandemic, Sheriff Joel Brott of the Sherburne County Jail where Mr. Barnes is being detained, ordered an indefinite "Social-Distancing Lock Down" that is impeding Mr. Barnes' from the law library to timely construct/file this new trial motion.

SCANNED
APR 0 6 2020
U.S. DISTRICT COURT ST. PAUL

Since February 6, 2020, Mr. Barnes has continuously requested production of the pre-trial and trial transcripts to incorporate by reference pertinent testimony in support of the issues herein, yet has continuously been denied production of said transcripts due to an e-voucher not having been submitted by attorney Lengeling in Feb., '20, thus the following references being limited to memory:

1.   Mr. Barnes assert that he was wholly denied a fair trial by having been forced into involuntary pro se by Judge Nancy Brasel in retaliation for Mr. Barnes inter alia having motioned for the RECUSAL of Judge Nancy E. Brasel on October 21, 2019 who was predisposed to discreetly rule against Mr. Barnes in favor of Judge Brasel's friend and former USAO colleague AUSA LeeAnn Bell, thus paralyzing Mr. Barnes' defense from being adequately presented due to his voiced legal ineptitude. As a subterfuge in lieu of addressing Mr. Barnes' pro se motion for RECUSAL, Judge Nancy Brasel "re-appointed" attorney Robert Lengeling to represent Mr. Barnes to undermine the Court from legally having to acknowledge Mr. Barnes' pro se RECUSAL filing, being that Judge Brasel had only moments earlier denied Mr. Barnes' reconsideration motion for substitution of counsel, but "re-appointed" attorney Lengeling moments later so that Mr. Barnes would no longer be acting in pro se despite the fact that District Court Judge Ann Montgomery had already granted attorney Lengeling's motion to WITHDRAW on September 26, 2019, and therein forced Mr. Barnes into involuntary pro se. Upon reappointment, attorney Lengeling specifically stated to Mr. Barnes that he should not have filed the RECUSAL motion against Judge Brasel because he (attorney Lengeling) had a good relationship with Judge Nancy Brasel from back when she was a state court judge, up to his recent cases before her at the federal level, and he know that she is not going to take lightly of Mr. Barnes having filed a RECUSAL motion against her; and that she is going to prove her allegiance to her friend and former USA Office colleague LeeAnn Bell (AUSA) and the federal courts by going against defendants like

Mr. Barnes which he should be able to see in how she has continuously sentenced African Americans to very lengthy sentences since being newly appointed. Attorney Lengeling told Mr. Barnes to reference the Cleopheus Reed and Miles Lewis cases where she "Judge Brasel" immediately sentenced both of those blacks to lengthy 20 year terms. (Please see attached Affidavit-in-Support Exhibit #2).

    Resulting in addition to Mr. Barnes having motioned for the RECUSAL of Judge Nancy Brasel thus fostering the undermining of his trial defense from adequately divested counsel, Mr. Barnes' post-trial defense continued to be undermined by Judge Brasel's persistent reprisal against Mr. Barnes by systematically attempting to keep her colleague attorney Lengeling in alliance with Mr. Barnes' post-trial filings in effort of thwarting a professional presentation of this instant judicial err inter alia erroneous actions taken by Judge Brasel in this case; transparently of knowing that her long-time colleague attorney Robert Lengeling is not going to raise issue with neither Judge Brasel nor his own deficient and negligent actions that are attempting to be swept over by Judge Brasel under the judicial subterfuge of attorney-client "strategy" differences.

    Even when attorney Lengeling stood before Judge Brasel on October 24, 2019 and reminded her that Judge Montgomery had already granted his motion to WITHDRAW, thus further implying that he was not going to be divested in any aspect in representing Mr. Barnes – having sent Mr. Barnes a letter stating that he would not even sit next to Mr. Barnes – Judge Brasel erroneously forced both attorney Lengeling and Mr. Barnes amid **bad blood** into the erring inadequate representation that impelled Mr. Barnes' involuntary pro se representation which Judge Brasel continued to feign culminated in attorney-client "strategy" differences, and a request by Mr. Barnes due to the Court foreclosing the substitution of a fourth attorney. Contrary to Judge Brasel's erroneous claim of attorneys being substituted upon Mr. Barnes' motions, none of Mr. Barnes' motions for substitution of counsel were ever granted by Magistrate Judge Katherine Menendez or District Court Judge Ann Montgomery. Magistrate Judge Katherine

Menendez granted attorney Matthew Mankey's motion to WITHDRAW; and, attorney Andrew Garvis' second motion to WITHDRAW. Then District Court Judge Ann Montgomery granted attorney Lengeling's motion to WITHDRAW. Neither judge granted Mr. Barnes's motions for substitution of counsel, as he was an indigent defendant without voice or reason to warrant substitution of appointed counsel. Mr. Barnes has never been granted any substitution of counsel, and Judge Brasel's claim of Mr. Barnes having waived the option of her instantaneous re-appointing of attorney Lengeling thus giving him an erroneous "Hobson's choice" of proceeding to trial with unprepared counsel or no counsel at all, was long decided as being an involuntary choice. See Gilbert v Lockhart, 930 F.2d 1356, 1360 (8th Cir. 1991).

Contrary to United States v. Barrow, 287 F.3d 733, 738 (8th Cir.), cert. denied, 537 U.S. 1024, 123 S. Ct. 535, 154 L. Ed. 2D 435 (2002) in genuinely assessing the depth and urgent validity of Mr. Barnes' voluminous complaints to Magistrate Judge Menendez, District Court Judge Montgomery, Chief District Court Judge John R. Tunheim, the Minnesota Professional Responsibility Office, and Director Susan Evans of the Minnesota Association of Criminal Defense Attorneys, of attorney Lengeling's transparent case overload deficiencies in neglecting to honestly represent Mr. Barnes in committed pre-trial and trial preparation proceedings, Judge Brasel erroneously deducted that Mr. Barnes's option to proceed in forced pro se or continue with attorney Lengeling was a choice of all or nothing. Wherein our Supreme Court interpreted in McCoy v Louisiana, 138 S. Ct. 1500; 200 L. Ed. 2d 821 (2018) that "to gain assistance, a defendant need not surrender control entirely to counsel. For the Sixth Amendment, in granting to the accused personally the right to make his defense, speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The Sixth Amendment contemplates a norm in which the accused, and not a lawyer, is master of his own defense." Thus, the Sixth Amendment guarantees to each criminal defendant

``the Assistance of Counsel for his defence." A defendant does not surrender control entirely to counsel, for the Sixth Amendment, in ``grant[ing] to the accused personally the right to make his defense," ``speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." Faretta v. California, 422 U. S. 806, 819-820, 95 S. Ct. 2525, 45 L. Ed. 2d 562.

When Mr. Barnes was ordered into involuntary pro se by Judge Ann Montgomery devoid any Faretta hearing at the September 26, 2019 substitution of counsel hearing, he was specifically advised by Judge Ann Montgomery during the conclusion of that hearing that under pro se he had the option of either opening and closing during trial, or cross-examining witnesses; or having attorney Lengeling as "advisory counsel" conduct either the opening or closing, or cross-examination of witnesses. Thus when Mr. Barnes was impelled again into involuntary pro se by Judge Brasel, he questioned Judge Brasel about said option outlined by Judge Montgomery, and Judge Brasel replied that she would check on this and address it with Mr. Barnes before trial, yet never did. Upon conferring with attorney Lengeling about conducting the cross-examining of the trial witnesses, attorney Lengeling straightforward stated to Mr. Barnes that Judge Brasel was not going to allow it. Mr. Barnes was erroneously forced inter alia into involuntary pro se under mis-advised instructions by the Court that undermined his right to be adequately represented, thus warranting a new trial. An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as ``the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." Weaver v Massachusetts, 582 U. S., at __, __, 137 S. Ct. 1899, 1908, 198 L. Ed. 2d 420, 431 (citing Faretta, 422 U. S., at 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562).

2. The government has the obligation to prove all elements of a crime beyond a reasonable doubt. Its a long-standing interpretation of our Supreme Court that any

essential element of the crime can be supplied by implication. <u>Pettibone</u> v <u>United States</u>, 37 LED 419, 148 US 197, 203 (1893). The essence of conspiracy is agreement. While "the law does not punish criminal thoughts," in a criminal conspiracy "the criminal agreement itself is the actus reus." <u>United States</u> v. <u>Shabani</u>, 513 U.S. 10, 16, 115 S. Ct. 382, 130 L. Ed. 2d 225 (1994). In order to convict a defendant of the crime of conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent. <u>Morrison</u> v <u>California</u>, 291 U.S. 82, 92, 54 S. Ct. 281, 78 L.Ed. 664 (1934); id. <u>United States</u> v <u>Bayer</u>, 331 U.S. 532, 542, 91 L. Ed. 1654, 67 S. Ct. 1394 (1947); and <u>United States</u> v <u>Rogers</u>, 982 F.2d 1241, 1244 (8th Cir. 1992), cert. denied, 113 S. Ct. 3017 (1993). Mr. Barnes maintain his innocence of having ever conspired with anyone to receive and distribute methamphetamine which was wholly evinced by the telecommunication evidence and witness testimonies wherein not an iota of substantial information was proffered to lead any reasonable juror not prosecutorially manipulated to conclude beyond a reasonable doubt that Mr. Barnes had an agreement with anyone to receive and distribute methamphetamine; hence Mr. Barnes having been arrested, indicted, and prosecuted as the sole participant in the government's theory of him having been involved in a "conspiracy" devoid even a temporal arrest of any alleged "co-conspirator" contrary to the Eighth Circuit repeatedly confirming that conspiracy charges are sufficient when they charge conspiracy with individuals **both** "**known** and **unknown** to the grand jury." <u>United States</u> v <u>Bell</u>, 651 F.2d 1255, 1258 (8th Cir. 1981). See also, <u>United States</u> v <u>Moss</u>, 591 F.2d 428, 434 (8th Cir. 1979), and <u>Morrison</u>, which quoted the Supreme Court in stating, "It is impossible in the nature of things for a man to conspire with himself. . . . Conspiracy imports a corrupt agreement between not less than two with guilty knowledge on the part of each." <u>Morrison</u> v. <u>California</u>, 291 U.S. 82, 92, 54 S. Ct. 281, 78 L. Ed. 664 (1934)(emphasis added). In addition to there existing no testimonial evidence that Mr. Barnes ever agreed with anyone to receive and

distribute methamphetamine, Judge Brasel denied Mr. Barnes' motion for production of the Grand Jury transcripts to specifically assess whether any purported conspirators were proffered to warrant the Grand Jury's return of this indictment.

Although there was evidence demonstrating the existence of some sort of drug wranglings at the residence of Eric Hoerner on October 20, 2017, the testimonies were insufficient in producing any evidence whatsoever of Mr. Barnes having ever entered into any agreement with anyone to conclude beyond a reasonable doubt that he agreed to receive and distribute methamphetamine. The testimonial allegations regarding the existence of a conspiracy between Mr. Barnes and his estranged brother were based on pure speculation given the fact that neither Sarah Whitewater, who could not even identify Mr. Barnes' estranged brother "Solo", nor Martez Graham, testified about any direct knowledge of anything being shipped to Mr. Barnes purportedly from his estranged brother. Sarah Whitewater testified that she did not know who shipped a box that she claimed to once had picked up from Eric Hoerner's residence, could not remember exactly when she purportedly picked up this box, did not see who the sender was, believed the box came from either Las Vegas or California which the postal records connoted that no delivery was made to Eric Hoerner's residence then from either Las Vegas or California, and did not know what was in the box. Martez Graham testified that he did not see any methamphetamine being mailed to anyone, and did not know who any methamphetamine was to be mailed to, or where any methamphetamine was to be mailed to. In contrast, the government presented no evidence of any theorized agreement between Mr. Barnes and the person who supposedly shipped the methamphetamine to Eric Hoerner's residence.

The Eighth Circuit has repetitiously reaffirmed in conspiracy cases similar to Mr. Barnes' herein that uncorroborated speculation of Mr. Barnes being associated in some sort of conspiracy agreement with his estranged brother cannot suffice as proof of a conspiracy, nor can mere suspicion, however strong, serve as proof of a conspiracy. See,

United States v. Ivey, 915 F.2d 380, 384 (8th Cir. 1990); United States v. Hernandez, 986 F.2d 234, 236 (8th Cir. 1993); United States v Rodriguez, 376 F.3d 1019, 1027 (8th Cir. 2003).  While the government need not prove the existence of a formal agreement or otherwise rely on direct evidence to establish a conspiracy, it must do more than pile "inference upon inference" from speculating witnesses such as the guesstimating testimonies of Sarah Whitewater and Martez Graham upon which to base a conspiracy conviction. Ingram v. United States, 360 U.S. 672, 680, 3 L. Ed. 2d 1503, 79 S. Ct. 1314 (1959) (quoting Direct Sales Co. v United States, 319 U.S. 703, 711, 87 L. Ed. 1674, 63 S. Ct. 1265 (1943)); id. United States v Cox, 942 F.2d 1282 (8th Cir. 1991). Rather, when not having been able to marshal truthful evidence to name any other specific co-defendants or co-conspirators in this bare bones conspiracy indictment, which could not characterize anyone as a co-conspirator, the government was obligated to prove beyond a reasonable doubt that Mr. Barnes had established an agreement with someone to receive and distribute the charged methamphetamine when it was evidenced that he was never in possession of any methamphetamine. And in the absence of any evidence inconsistent with the government's hypothesis, or of any evidence from which the jury could have inferred a knowing agreement by any other non-arrested or non-indicted persons and Mr. Barnes, a new trial should be granted on the basis of insufficiency of the evidence.

3.   Mr. Barnes has the following additional issues to present that denied his right to a fair and impartial trial thus warranting a new trial yet being unsure of the 14 day time limit to incorporate these motions due to not being afforded as a layperson actually divested counsel; not having been furnished with the consistently requested pre-trial and trial transcripts; and being time-restrained under the Sherburne County Jail "Social-Distancing Lock Down" conditions resulting from the global COVID-19 pandemic:

*    FAILURE TO PRODUCE GOVERNMENT WITNESS SUBPEONAED BY DEFENSE

*    FAILURE TO GRANT REPEATED CONTINANCE MOTION

*    ERRONEOUSLY DENYING MOTION FOR RECUSAL

*    PROSECUTORIAL MISCONDUCT

*    ERRONEOUSLY ADMITTING PREJUDICIALLY MISLEADING PHOTOS

*    CONTINUING FAILURE TO DECLARE OR GRANT A MISTRIAL

*    FAILURE TO PRODUCE THE GRAND JURY TRANSCRIPTS AS ORDERED BY MAGISTRATE JUDGE

Thus Mr. Barnes request intertwined in this motion to preserve the issues above in conjunction with four others that he has not been afforded the pre-trial and trial transcripts to fully develop.

WHEREFORE, Defendant Dwight Frederick Barnes, RESPECTFULLY beseech this Court's granting of a new trial derivative of the preceding accompanied by attached Exhibits.

Respectfully Submitted,

s/ DWIGHT FREDERICK BARNES

Dated this 31st day of March 2020.

                                             Dwight Frederick Barnes, In Pro Se
                                             Sherburne County Jail
                                             13880 Business Center Drive
                                             Elk River, Minnesota 55330