UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-120 (NEB/KMM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DWIGHT FREDERICK BARNES,

    Defendant.

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING POSITION

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and LeeAnn K. Bell, Assistant United States Attorney, submits its response to Defendant's Positon Regarding Sentencing, Dkt. 317.

There is no dispute that Court has an obligation to correctly calculate the Guidelines. With respect to the Base Offense Level, there is also no dispute that it is correct as set forth in the Presentence Investigation Report ("PSR"). The question then becomes whether the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) merit a variance from the Guidelines in this case. Defendant argues that a variance is warranted because of the disparity between how the Guidelines treat a mixture and substance containing methamphetamine versus how the Guidelines treat the actual amount of methamphetamine involved.

By way of background, the Guidelines address methamphetamine in three possible ways, and direct the application of the provision that results in the highest base offense level: (1) the amount of the total weight of any mixture containing methamphetamine; (2)

the amount of actual methamphetamine contained in the mixture (the total weight multiplied by the purity); or (3) the amount of "ice," that is the a mixture of a substance that is at least 80% pure.[1] U.S.S.G. § 2D1.1. The resulting Guidelines are generally higher for the amount of actual methamphetamine (or ice) than for the amount of the mixture of methamphetamine, which creates the alleged disparity.

There is no dispute that some courts have taken the position that they do not agree with the differentiation for actual methamphetamine in the Guidelines. To be clear, the United States agrees that the Court may disagree with the Guidelines. One of the ways a court can exercise a disagreement in methamphetamine cases is to correctly calculate the Guidelines using the actual Guidelines, but then also consider the mixture Guidelines. However, as pointed out by Defendant, whether or not the court disagrees with the Guidelines, the ultimate question remains whether or not the Guidelines *in each particular case* over represent some aspect of the sentencing factors. *See* Dkt. 317 at 20, citing *United States v. Jennings*, 2017 WL 2609038 (D. Idaho, 2017). Because in this case the actual Guidelines do not cause a result that merits a downward variance, the Court need not rule on whether it agrees or disagrees with the Guidelines themselves.

In this case, were the Court to use only the methamphetamine seized on October 20, 2017, to determine the base offense level under the Guidelines (including two levels for

---

[1] In my experience, the "ice" Guideline has never been used, likely because actual amount of methamphetamine versus the mixture are what is significant. Thus, I will not address the issue of the ice-related Guideline application here.

obstruction of justice) the different approaches would yield the following (applying the undisputed Criminal History Category IV):

- Methamphetamine Actual Total Offense Level 36 (Base Offense 34 + 2 obstruction) = 262-327 months' imprisonment

- Methamphetamine Mixture Total Offense Level 32 (Base Offense 30 + 2 obstruction) = 168-210 months' imprisonment

U.S.S.G. § 2D1.1.

As described by Defendant, some courts have asserted that the amount of actual methamphetamine contained in the mixture is no longer a metric to measure the seriousness or severity of the offense as was arguably one of the original purposes for the different Guidelines. This argument, that methamphetamine is now nearly always pure whether found in possession of a kingpin or a mule, might be persuasive where the Defendant in this case a mule, but he was not. Instead, Defendant was the head of a distribution ring in Rochester, Minnesota.

It is true that the United States did not argue that the Guidelines required an enhancement for his role. However, that is not the end of the analysis in the context of the § 3553(a) factors. Here, Defendant was the head of the conspiracy insofar as Minnesota was concerned. Of course, his brother had the connection to the Mexican source of supply, but his brother was not running a conspiracy to receive and then distribute the methamphetamine in Rochester. Instead, Defendant used others (both with their knowledge and without) to obtain address to send packages and he used others to physically collect the packages, thereby insulating himself from the risks of doing so. He also sold methamphetamine to others who he knew would in turn distribute those quantities. Thus,

3

to the extent that the methamphetamine actual Guidelines serve as a proxy for a defendant's role, here that role is not overstated by the application of those Guidelines.

In this case, there is no dispute that Defendant is responsible for the methamphetamine seized on October 20, 2017, as well as any methamphetamine that the Court finds by a preponderance of the evidence was part of the conspiracy. Any amounts of drugs that the Court finds were part of the conspiracy, can be included in this Court's consideration of the overall sentence under 18 U.S.C. § 3553(a).[2]

At trial, the United States presented evidence that Defendant picked up *four* additional packages of methamphetamine at the Hoerner residence during the conspiracy. The Court will also recall that because of the class of mail used to send the various packages the information about each package varied and that the most information was available from the May 13 and May 16, 2017, packages. For example, the Court could look to the labels for each of the May packages. They were admitted at trial and could be compared to the writing on the label of the October 20, 2017, package. The labels show by a preponderance of the evidence that all of the packages were sent by the same person because the handwriting is obviously by the same person:

---

[2] The amounts could also be included in calculating the Guidelines, but here the additional mixture amounts would not change the Guidelines.



And, if the person (Defendant's brother) was sending methamphetamine on October 20, 2017, the May packages also contained methamphetamine and based on their weight, it was a similar amount. Further, with respect to the July 2017 packages, although the Postal Service did not maintain a copy of the label, we know that the July packages were sent to the Hoerner residence and that, like all of the other packages, Defendant traveled to the area of the Hoerner residence near the time those packages were delivered. All of this combined with the other witness testimony at trial about the ongoing nature of packages of drugs being sent to Defendant at the Hoerner residence from Defendant's brother, the Court should conclude that the other four packages contained methamphetamine. We also know from the testimony of Sarah Whitewater that at least one other address was used by Defendant to receive packages. Given all of this, the Court should consider the ongoing nature of the offense, including the four other packages in assessing whether a variance is appropriate in this case.

Finally, Defendant has cited a number of individual cases he asks the Court to use for comparison (as examples of other methamphetamine mixture variances and as examples of sentences that were imposed that show that his request for a sentence of 135 months is reasonable). Dkt. 317 at 37-39, 50-52. This Court is not required to engage in a comparison of the sentences of other allegedly similar defendants. *See United States v. Keys*, 918 F.3d 982, 989 (8th Cir. 2019) ("We have repeatedly declined to require district judges to compare and contrast the defendant being sentenced with allegedly similar prior offenders."). And, it would be impossible for this Court to know and understand the details of these individual cases such that a direct comparison was possible.[3] It is certainly possible that someone who responsible for more methamphetamine than Defendant might have received a sentence that is shorter than the one the United States is asking the Court to impose here. That of course is depends on a wide variety of factors. For example, two defendants might both be in Criminal History Category IV, but one has several minor offenses, while the other person may have a long history of serious convictions which did not receive points under the Guidelines because of their age. The Court would rightly treat those two defendants differently.

---

[3] While the undersigned did not go through each case identified by Defendant, the undersigned happened to be co-counsel on *U.S. v. Edgar Sierra Serrano*, 19-61 (ECT/KMM) and Defendant does not correctly state the sentenced imposed (Defendant represents Sierra-Serrano was sentenced to 180 months, when he was actually sentenced to 200 months). *See U.S. v. Edgar Sierra Serrano*, 19-61 (ECT/KMM) Dkt. 163.

Ultimately, it is the position of the United States that the appropriate sentence is 262 months when the Court considers all the sentencing factors, including the fact that Defendant is on supervised release.


Dated: July 16, 2020                                         Respectfully Submitted,

                                                             ERICA H. MacDONALD
                                                             United States Attorney

                                                             *s/ LeeAnn K. Bell*

                                                             BY:   LEEANN K. BELL
                                                             Assistant U.S. Attorney